Deon Thomas, In Proper Person
14626 Red Gum Street
Moreno Valley, CA 92555
951-413-9071
dlthomas32@gmail.com

FILED

2014 JUN 23  PM 3: 54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY: _____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Deon Thomas, In Proper Person<br>Plaintiff<br><br>v.<br><br>Consumerinfo.com, Inc.<br>Defendant | ) Case No. ED CV 13-01712 GW<br>) (DTBx)<br>)<br>) **PLAINTIFF DEON THOMAS**<br>) **NOTICE OF MOTION AND MOTION**<br>) **FOR SUMMARY JUDGMENT**<br>) **AGAINST DEFENDANT**<br>) **CONSUMERINFO.COM, INC.**<br>)<br>) Date: July 21, 2014<br>) Time: 8:30 a.m.<br>Courtroom: 10<br>Judge:  George H. Wu |

**TO THE COURT, PARTIES AND THEIR ATTORNEYS:**

**PLEASE TAKE NOTICE** that on July 21, 2014 at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 10 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, CA 90012, California, Plaintiff Deon Thomas (hereinafter "Plaintiff") will move for summary judgment against Defendant Consumerinfo.com (hereinafter "CIC" or "User").

Pursuant to California Central District, Rule 7-3, Plaintiff conducted a meet and confers process prior to filing this Notice of Motion and Motion for Summary Judgment.  This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and is made on the grounds

1

**PLAINTIFF DEON THOMAS MOTION FOR SUMMARY JUDGMENT**

that there is no genuine issue of material fact and Plaintiff is entitled to summary judgment as a matter of law for the following reason:

    1)  CIC was not entitled to obtain Plaintiff's consumer credit report, as there was no transaction or obligation that constituted a contract or agreement with Plaintiff that allowed CIC to obtain his consumer credit report, for a fee, as enumerated under Fair Credit Reporting Act (FCRA) § 604, at 15 U.S.C. § 1681b, within the First Amended Complaint (FAC); CLAIM UNDER FCRA 15 U.S.C. § 1681b(a) and (F)(i).

Plaintiff contends that there are no genuine issues of material fact and therefore is entitled to judgment as a matter of law on his claim.

This Motion is based on this Notice, attached Memorandum of Points and Authorities, Affidavit of Plaintiff Deon Thomas and the exhibits attached hereto, all papers on file herein, and such oral argument as this Court may deem proper.

July 23, 2014                        Respectfully Submitted

By: _____
           Deon Thomas, In Proper Person

///

///

///

///

///

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BRIEF SUMMARY OF CASE

Plaintiff Deon Thomas is an individual proceeding in proper person against CIC for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  As will be seen herein, there are no genuine issues of material fact. Therefore, this Court can rule as matter of law whether the Defendant, CIC, has violated the FCRA.

Plaintiff's lawsuit arises out of a relatively simple set of facts, CIC claims to offers a credit monitoring system for individuals seeking such monitoring for Experian.  CIC alleges that Experian places service under its "consumerinfo.com" web address. CIC clearly states on its home page it is "powered by Experian."

CIC began accessing Plaintiff's credit reports without Plaintiff's permission.  By the time Plaintiff checked his credit report, CIC had repeatedly obtained his reports without authorization. They claim they refunded a credit card belonging to the Plaintiff, but it was not the Plaintiff's card.  Plaintiff became extremely concerned and immediately began contacting CIC about why they were obtaining his credit report and claimed to be charging him money.  In the exhibits attached to this motion, the Court will observe the number of times that Plaintiff has (1) asked for information as to why they were obtaining his credit reports, (2) requested CIC to stop accessing his credit reports and (3) demanded proof that he had business relationship with CIC.

The Plaintiff's repeated requests for information were largely ignored until the very end, when he ultimately moves forward to sue CIC.  When he finally received back an answer, he was advised by CIC that he had signed up for the service with them.  They alleged to cancel the service and claimed to reimburse him for all of the alleged payments that they took from a credit card.

1    CIC did not have a permissible purpose to obtained Plaintiff's credit reports a

2  documented fifty-two (52) times with impunity.  Through multiple dispute letters sent by

3  Plaintiff requesting CIC to investigate why they obtained his credit reports, CIC failed to provide

4  to him a subscriber certificate, contract or agreement that would grant them a permissible

5  purpose.  Plaintiff never received nor were there any existing copies of any type of signed or

6  otherwise contract and/or agreement which gave CIC a business transaction to any terms of any

7  account, which would give rise to a permissible purpose to obtain Plaintiff credit report.

8

9    Plaintiff will demonstrate that as a result of these violations, he is entitled to

10 compensation as provided by the FCRA in the amount of $1,000 per violation, or $52,000, in

11 addition to any applicable fees and costs that are also permitted by statute.

12

13 **II.   PROCEDURAL BACKGROUND**

14    Plaintiff, proceeding pro per, filed a complaint in the Superior Court of California,

15 County of Riverside, Small Claims Division in Moreno Valley on August 23, 2013, alleging

16 Consumerinfo.com, Inc., obtained his consumer report without a permissible purpose.  CIC

17 removed to this court on September20, 2013. (DOC # 1).  Defendant's counsel answered

18 Plaintiff Small Claims Complaint on November 18, 2013. (DOC # 8).  Plaintiff filed a First

19 Amended Complaint (FAC) on October 22, 2013.  (DOC # 12).  Defendant's counsel answered

20 Plaintiffs FAC on October 24, 2013.  (DOC # 14).  Discovery Cut-Off date was on May 30,

21 2014, according to Scheduling Conference. (DOC # 16).   Plaintiff files for Summary Judgment

22 as it is now appropriate when the records has demonstrated that there is no genuine issues of

23 material fact.

24 **III.   SUMMARY OF UNDISPUTED FACTS**

25    The following facts are not in dispute:

26

27

28

1.      Plaintiff received his credit reports on or about August of 2011, through Experian, January of 2012 through Experian, March of 2012 through Equifax, September of 2013 through Experian,  via CRA's and found a total of fifty (52) entries by CIC dated from July 21, 2011 through April 5, 2013, without a permissible purpose. *See* (Plaintiff's FAC Exhibit A 1-3 and B 1-3 thereto); (SUF ¶ 1); (Plaintiff's Affidavit ¶ 1).

2.      Upon discovery of CIC obtaining Plaintiff's credit report, he mailed a timely letter of dispute to CIC dated on August 17, 2011.  *See* (*Id.* Plaintiff's FAC ¶ 17 and Exhibit C thereto); (SUF ¶ 2); (Plaintiff's Affidavit ¶ 2).

3.      CIC made additional inquiries into Plaintiff's consumer reports, Plaintiff mailed a second letter of dispute to CIC requesting permissible purpose to do so, dated on April 2, 2012.  *See* (*Id.* Plaintiff's FAC ¶ 18 and Exhibit D thereto); (SUF ¶ 3); (Plaintiff's Affidavit ¶ 3).

4.      CIC further violated Plaintiff privacy by making even more inquiries into Plaintiff's credit report, they failed to disclose what their permissible purpose was after previous multiple dispute letters, so Plaintiff mailed a third letter of dispute to CIC dated on November 2, 2012. *See (Id.* Plaintiff's FAC ¶ 19 and Exhibit E thereto); (SUF ¶ 4); (Plaintiff's Affidavit ¶ 4).

5.      CIC performed many inquiries into Plaintiff's private consumer credit report without sending any documentation to show they had a permissible purpose to obtain Plaintiff credit report.  CIC has never provided any signed verification or certified copies of any alleged reason or permissible purpose or copies of any signed contract or agreement that would give them any permissible purpose.  Plaintiff mailed a dispute letter On September 2, 2011 to EXPERIAN of CIC's impermissible access into his consumer profile and requested immediate deletion. *See* (*Id.* Plaintiff's FAC ¶ 21); (SUF ¶ 5); (Plaintiff's Affidavit ¶ 5).

6.      CIC failed to investigate any of Plaintiff's multiple timely disputes upon receipt, in violation of FCRA U.S.C. § 1681b. *See* (*Id.* Plaintiff's FAC ¶ 22); (SUF ¶ 6); (Plaintiff's Affidavit ¶ 6).

7.      Plaintiff has personal knowledge that CIC never had a contract or agreement that would allow them to buy, purchase or service any alleged obligation between CIC and Plaintiff. *See* (*Id.* Plaintiff's FAC ¶ 24); (SUF ¶ 7); (Plaintiff's Affidavit ¶ 7).

8.      Plaintiff has personal knowledge that he did not signed any contract or agreement of any transaction that would assign or transfer ownership to User or any third party. *See* (*Id.* Plaintiff's FAC ¶ 25); (SUF ¶ 8); (Plaintiff's Affidavit ¶ 8).

9.      Plaintiff was never an applicant nor was ever informed in writing that User or any other third party was involved in an agreement, sale, merger or exchange to secure him to a transaction or agreement. *See* (*Id.* Plaintiff's FAC ¶ 28); (SUF ¶ 9); (Plaintiff's Affidavit ¶ 9).

10.     Plaintiff never received any written documentations that shows User has been "retained" or "placement" by any entity that may or may not have been involved with a "transaction" with the Plaintiff. *See* (*Id.* Plaintiff's FAC ¶ 29); (SUF ¶ 10); (Plaintiff's Affidavit ¶ 10).

11.     Plaintiff has never provided written instruction to CRA authorizing it to provide Plaintiff's consumer report to User or any third party on their behalf. *See* (*Id.* Plaintiff's FAC ¶ 32); (SUF ¶ 11) ; (Plaintiff's Affidavit ¶ 11).

12.     Plaintiff never received any written notice of assignments or documentations (contracts, agreements or otherwise) from CIC after he disputed multiple times of the impermissible purpose inquiries into his consumer report. *See* (*Id.* Plaintiff's FAC ¶ 33); (SUF ¶ 12); (Plaintiff's Affidavit ¶ 12).

13.     Plaintiff never received any documentation (contract agreement or otherwise) directly from CIC after he disputed the inquiries, describing what they certified to the CRA of their

permissible purpose to obtain his consumer file, pursuant to Federal Gramm-Leach-Bliley Act, 15 U.S.C.A. Section 6801 et seq. (2000), ("GLB Act"). *See* (*Id.* Plaintiff's FAC ¶ 34); (SUF ¶ 13); (Plaintiff's Affidavit ¶ 13).

14.     At no time material did Plaintiff ever have a relationship of any kind with User as defined under FCRA U.S.C. § 1681b(3)(a)-(g). *See* (*Id.* Plaintiff's FAC ¶ 36); (SUF ¶ 14); (Plaintiff's Affidavit ¶ 14).

15.     On April 19, 2013 sent by certified mail/return receipt # 7011 1150 0000 6427 6317 and April 22, 2013, by fax, Plaintiff sent a Dispute and Notice of Pendency of Action to CIC, informing them of the dates in which they violated the FCRA.  *See* (*Id.* Plaintiff's FAC ¶ 40 and Exhibit G); (SUF ¶ 15); (Plaintiff's Affidavit ¶ 15).

16.     Plaintiff received a computer-generated letter from CIC dated on April 26, 2013, without any name associated with the document.  The letter was very generic, and it did not address any of Plaintiff's disputes previously sent to them. *See* (*Id.* Plaintiff's FAC ¶ 41 and Exhibit H); (SUF ¶ 16); (Plaintiff's Affidavit ¶ 16).

17.     On May 1, 2013, at 5:34 pm, and 8:59 pm, Plaintiff sent by fax a response letters, first on which was to address the letter sent by CIC, next was a dispute and Final Notice of Pendency of Action letter informing them, they failed to specifically address his disputes, by sending a letter that appeared to be computer generated.  The letter was to see if they wish to scttlc this matter outside of court.  *See* (*Id.* Plaintiff's FAC ¶ 42 and Exhibit I 1-8); (SUF ¶ 17; (Plaintiff's Affidavit ¶ 17).

18.     On May 5, 2013, Plaintiff received a phone call from a Lisa Hall, who claimed to be CIC's, Business Analyst.  She failed to address Plaintiff's disputes regarding their impermissible purpose and failed to gives direct answer to Plaintiff's disputes.  *See* (*Id.* Plaintiff's FAC ¶ 43); (SUF ¶ 18); (Plaintiff's Affidavit ¶ 18).

19.     Plaintiff received yet another computer generated letter from CIC dated on May 7, 2013, again without any name associated with the document. The letter was very generic, and it did not address any of Plaintiff's disputes previously sent to them.  *See (Id.* Plaintiff's FAC ¶ 44 and Exhibit J); (SUF ¶ 19); (Plaintiff's Affidavit ¶ 19).

20.     On May 16, 2013, Plaintiff sent by faxed at 3:57 pm, and by certified mail # 7013 0600 0000 4598 0319 a letter address directly to Lisa Hall, dealing with the May 5, 2013 conversation and May 7, 2013 letter to Plaintiff. Informing them of the lack and failure to provide proof that they had permissible purpose and they failed to do so, after Plaintiff's multiple disputes.  *See (Id.* Plaintiff's FAC ¶ 45 and Exhibit K 1-5); (SUF ¶ 20); (Plaintiff's Affidavit ¶ 20).

21.     From May 31, 2013 through August 2, 2013, Plaintiff has been corresponding via email Disputing CIC's Impermissible purpose and failure to provide proof of permissible purpose with Lisa Hall, to no avail.  *See (Id.* Plaintiff's FAC ¶ 46 and Exhibit L); (SUF ¶ 21); (Plaintiff's Affidavit ¶ 21).

22.     Plaintiff had no other choice but to seek justice from the courts.  On October 4, 2013, Plaintiff received a Judgment award in the Superior Court of the State of California, County of Riverside, in Small Claims against CIC for civil penalties and cost, due to their impermissible purpose access into his Experian consumer report.  *See (Id.* Plaintiff's FAC ¶ 47 and Exhibit M); (SUF ¶ 22); (Plaintiff's Affidavit ¶ 22)

23.     In the ***Statement of Decision*** dated on October 1, 2013, in the judgment award ordered by Cynthia Loo, Judge Pro Tem of Superior Court, she states: "The primary reason for the decision for the Plaintiff was based on the lack of contractual relationship between Plaintiff and Defendant, a lack of permissible purpose for Consumerinfo.com's inquiries, and the lack of responsiveness to Plaintiff's repeated inquiries as to why Consumerinfo.com was making

repeated inquiries.  The court received insufficient proof that Plaintiff enrolled in a program for crediting monitoring products with Consumerinfo.com." *See* (*Id.* Pl. FAC ¶ 48 and Exhibit N thereto); (SUF ¶ 23); (Plaintiff's Affidavit ¶ 23).

24.     Plaintiff was in a deposition ("Depo") dated on February 21, 2014, conducted by Defendants attorney Nilab Rahyar ("Ms. Rahyar").  Ms. Rahyar asked Plaintiff to read a statement that was in an email correspondence, as it stated in the email: "Please rest assured that we will provide a substantive response to your demand as soon as we finish our review.  At present my goal is to provide that response by next week, but I will keep you posted of any changes of or developments." *Id.* (Pl. FAC Exh. L pgs. 1-6; Depo page 82 ¶¶ 3-7).

25.     Defendant failed to deliver any documentation as stated by Ms. Hall as to any verified and/or authenticated documentation to prove Plaintiff had ever applied with them to demonstrate a business relationship.

26.     It wasn't until Plaintiff filed a suit against CIC on August 2, 2013, that they provided the courts with alleged screenshots of unauthenticated and unverified computer generated summary page that they alleged Plaintiff signed up with CIC.  On October 4, 2013, Plaintiff received a Judgment award in the Superior Court of the State of California, County of Riverside, in Small Claims against CIC for civil penalties and cost. (Pl. FAC ¶ 47; Exh. M).

27.     During the depo, Ms. Rahyar, presented a document Customer Profile Record ("summary page") as Exhibit 2 that was marked for identification and she questioned Plaintiff stating: "Okay, and I'll represent to you this is a true and correct copy of a screenshot from IP2Location.comm, showing the location of the IP address of the computer that was used to enroll in Triple Advantage Credit monitoring under your name." *Id.* (Depo pg. 77 ¶¶ 24, 25 & 78 ¶¶ 1-6; Depo. Exh. 2); (SUF ¶ 24); (Affidavit ¶ 23).

28.     The same document that Ms. Rahyar referred to in depo, was a summary page that had a location with longitude and latitude with IP address location of a person in which the order was made, and it was not Plaintiff, nor located at his address.  Plaintiff pulled up the location from the longitude and latitude that turned out to be a locked and secured storage unit location.  The computer generated summary page with the longitude and latitude location was 5.2 miles away from Plaintiff's home address.  *See* (SUF ¶ 25; Pl. Affidavit ¶ 24).

29.     The location from the document referred to by Ms. Rahyar during the Depo turned out to be a storage location that has a locked gate, where only people who have a password can enter, and Plaintiff certify that he never had a storage unit at this location, and storage location is attached hereto.  *See* (SUF ¶ 26; Plaintiff Affidavit ¶ 25).

30.     Plaintiff contends that someone other than the Plaintiff used a computer at the secured storage location to initiate membership with CIC and signed up with them by laptop, phone, IPad, or some other communication device, and none of which belonged to Plaintiff.  Plaintiff never initiated a business transaction with CIC that serves as the alleged basis for obtaining the credit reports *See* (SUF ¶ 27; Plaintiff Affidavit ¶ 26).

31.     Furthermore, why would CIC not produce any of the documents they alleged created the membership for almost two years, when plaintiff has evidence of dispute letters with them, but now they create this alleged summary page document?

32.     Plaintiff did not see the alleged summary page until at least two years after his disputes, and the document has not been authenticated nor does it identify witnesses that can testify to this form.  *See* (SUF ¶ 28; Plaintiff Affidavit ¶ 27).

33.     Plaintiff never had a secured storage at the location according to the longitude and latitude sheet that was 5.2 mile away from his home.  *See* (SUF ¶ 29; Plaintiff Affidavit ¶ 28).

PLAINTIFF DEON THOMAS MOTION FOR SUMMARY JUDGMENT

34.    Plaintiff never owned a credit card as claimed by CIC's summary sheet. *See* (SUF ¶ 30; Plaintiff Affidavit ¶ 29).

35.    At no time material had Plaintiff ever applied for, used, nor had knowledge of any account transaction prior to Defendant being sued by Plaintiff in small claims court. *See* (SUF ¶ 31; Plaintiff Affidavit ¶ 31).

36.    Defendant's representative's fabricated the identity, and claim that they possessed Plaintiff's credit card, address, IP address and social security number on the Account application summary page, all of which are unfounded because Plaintiff was never a party to any business transaction with CIC. *See* (SUF ¶ 32; Plaintiff Affidavit ¶ 32).

Despite Plaintiff's request, Defendant never furnished the documentation that supposedly demonstrated Plaintiff's obligation on the alleged Account transaction, although its representative had promised to do so. After sending multiple dispute letters and consulting with Ms. Hall, asking for the documentations of his obligation on the Account. Defendant refused to provide the documentation until he sued them in court.

## IV.    <u>AUTHORITY FOR GRANTING MOTION FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate when the record demonstrates that there is no genuine dispute as to any material fact. Fed. R. Civ. Proc. 56(a). A fact is material if it is (1) germane to the element of the claim at issue, an inquiry governed by the substantive law upon which the claim rests, and (2) is capable of affecting the outcome of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine, if the quality and quantum of evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Where, as here, the party moving for summary judgment is without the ultimate burden of persuasion at trial, the moving party satisfies its initial burden by either (1) producing evidence which negates an essential element of the challenged claim or (2) shows that the

1  nonmoving party does not have sufficient evidence to support an essential element of the

2  challenged claim. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F. 3d 1099, 1102 (9th Cir.

3  2000).   Once a moving party carries its initial burden, the nonmoving party **must** produce

4  evidence capable of supporting a reasonable jury verdict in favor of the challenged claim. *Id.* At

5  1103; *Anderson,* 477 U.S. at 248.  If the nonmoving party fails to produce such evidence,

6

7  summary judgment is warranted.

8       Summary judgment may be granted in whole or as to any issue or claim for which there

9  is no genuine dispute of material fact.  Fed. R. Civ. Proc. 56(a) & (g).

10  V.    **LAW AND ARGUMENT**

11

12       A. **PLAINTIFF STATED A CLAIM UNDER FCRA 15 U.S.C. § 1681b(a) and
           (F)(i), AS A MATTER OF LAW BECAUSE CIC WAS NOT ENTITLED TO
13         OBTAIN PLAINTIFF'S PRIVATE EXPERIAN AND EQUIFAX CONSUMER
           CREDIT REPORT**

14
15       Plaintiff's motion for summary judgment should be granted in his favor because

16  Defendant frequently obtained Plaintiff's Experian and Equifax credit report for a reason not

17  permitted by 15 U.S.C. § 1681b.  CIC did not take any steps to verify if Plaintiff had a

18  contractual agreement with them; even after multiple disputes were sent to them; nor did CIC

19  have any written authorization signed by Plaintiff permitting CIC to obtain his credit report.  (Id.

20  28, 29, 32 and 33).   On August of 2011, Plaintiff became aware of CIC obtaining his Experian
21
22  credit report.  Plaintiff was concerned as to why CIC accessed his credit report, so he made a

23  dispute to them.  Plaintiff did not receive any explanation as to why they accessed his credit

24  report, after his initial timely dispute on August 17, 2011.  Plaintiff had no connection with CIC

25  in any way that may pertain to a legitimate business transaction.  CIC obtained Plaintiff's

26  Experian credit report after his initial dispute with them, but failed to address the dispute already
27
28  made by Plaintiff.  There were never any intended agreements or contracts between CIC and

Plaintiff that could possibly be described as a legitimate business relationship.   Plaintiff knowing that there were no business relationships between CIC and Plaintiff, he then disputed with Experian directly on September 2, 2011.

Defendants continued obtaining Plaintiff's credit report.  Plaintiff disputed two more times with CIC on April 2, 2012 and November 2, 2012, as they continued to obtain his credit report during disputed time period.  Defendant, again, did not respond to Plaintiff's dispute letters until he initiated correspondence of litigation by sending "A Notice of Pendency of Action", dated on April 19, 2013, sent by certified mail and on April 22, 2013 by fax. See (Pl. FAC. Exh. G).  CIC made no effort to responded to Plaintiff's disputes until almost **two years later**, when he brought to their attention litigations.  After almost two years and a multitude of inquiries, CIC finally respond to Plaintiffs Notice of Pendency of Action by sending a very generic response letter (Pl. FAC Exh. H), which still failed to address through verified documentation as to why they obtained his consumer credit reports.  Defendant has failed to deliver any verified documentations after multiple dispute requests as to any  **"legitimate business need" or "reasons to believe"** they had any permissible purpose to access Plaintiff's credit reports.  Plaintiff has presented multiple dispute letters to CIC, CIC was aware of Plaintiff's disputes as stating, "I never heard of this company before and I never had any business with you.  I request that you tell me why you are on my report and if you do not have a valid reason please delete yourself." Id. (Pl. FAC Exh. C), and CIC did not take any action or investigate the matter at that time, as Plaintiff did not receive correspondence from them until he started litigation proceedings, which was almost two years after they received his dispute letters.

Plaintiff received a generic correspondences from CIC dated on April 26, 2013 (Pl. FAC Exh. H), and its content was vague and did not have any verified documentation to show Plaintiff had a business relationship with them.   Plaintiff responded to the April 26, 2013 correspondence

by sending through certified mail and fax transmittal with another letter to CIC, of Final Notice

of Pendency of Action dated on May 1, 2013 (Pl. FAC Exh. I) as they failed to address

Plaintiff's previous dispute letters.   Plaintiff received a phone call from a Lisa Hall ("Ms. Hall")

dated on May 5, 2013, who claimed to be CIC's Business Analyst. *Id.* (Pl. FAC ¶ 43).   Ms. Hall

only made conclusory claims to plaintiff, yet still failed to prove any verified documentation to

her alleged assertions.   Mere statements made that are not verified through documentation are

conclusory. *See Leigh v. Warner Bros., Inc.* 212 F.3d 1210, 1217 (11th Cir. 2000); (Ellis v.

*England, 432 F.3d 1321, 1325-26 (11th Cir. 2005).* (Mere conclusory statements made without

providing competent proof will not be upheld in any court.).   Plaintiff received yet another

generic correspondences from CIC dated on May 7, 2013 (Pl. FAC Exh. J), and its content was

vague and did not have any verified documentation to demonstrate or prove Plaintiff had a

business relationship with them.

　　　　Plaintiff sent a reply addressed to Ms. Hall dated on May 16, 2013 (Pl. FAC Exh. K),

disputing the content of our conversation, also the generic letter dated May 7, 2013, and

requesting strict proof, as it was not provided in almost two year prior (Pl. FAC Exh. K).

Plaintiff and Ms. Hall were corresponding back and forth through email from May 31, 2013

through August 2, 2013 (Pl. FAC Exh. L), to discuss Plaintiff's multiple disputes.

　　　　Defendant was fully aware that no business relationship existed because Plaintiff for

almost two year has (1) asked for information as to why they were obtaining his credit reports,

(2) requested CIC to stop accessing his credit reports and (3) demanded proof that he had

business relationship with CIC.   Defendant had the ability to respond to Plaintiff's consistent

effort to resolve this matter, but they failed in their duty to do so.

　　　　Under the FCRA, a person must have a permissible purpose for obtaining a consumer

report.   FCRA 15 U.S.C. § 1681(f)(1) and 15 U.S.C. § 1681b limits the circumstances under

which a credit reporting agency may furnish credit reports to an enumerated set of "permissible

purpose." One enumerated permissible purpose is their use of a credit report "in connection with

a credit **transaction** involving the consumer on whom the information is to be furnished and

involving the extension of credit to, or review or collection of an account of, the consumer." *Id.*

15 U.S.C. § 1681b(a)(3)(A).  see, e.g., *Huertas v. Galaxy Asset Mqmt.*, 641 F.3d 28 (3d C i r .

2011)(It was  considered by the Court that Plaintiff made a consumer transaction which

ultimately resulted in AMP accessing his credit report to collect on his delinquent accounts,

which is a permissible purpose under 15 U.S.C. § 1681b.); *Korotki v. Attorney Servs. Corp.*, 931

F. Supp. 1269 (D. Md. 1996) (Plaintiff testified that he asked Defendant to perform certain

services.  Plaintiff admitted at his deposition, and has not denied at any time, that he made the

agreement described.) (Defendant is nevertheless entitled to Summary Judgment in this case

because Plaintiff has neither produced nor proffered any evidence that Defendant, or other

Defendant, acted in bad faith.) ; *Trinh v. Weltman, Weinberg & Reis Co., LPA*, 2012 WL

5824799 (N.D. Ind. Nov. 14, 2012) (Plaintiff case was dismissed because he made bare bones

allegation without provide facts or evidence.) ("The record is clear that the utilization of Trinh's

credit report, as supported by Exhibit PI to the Complaint, was under the protection of a

permissible purpose, and no violation of the FCRA can be found when Defendants were acting

under this permissible purpose.") *id.*; *Norman v. RJM Acquisitions, LLC*, 2012 WL 3204977

(N.D. Tex. Aug.8, 2012) (Summary Judgment was granted because Plaintiff mere assertion that

there is an absence of evidence that Defendant did not own Plaintiff's account, Plaintiff failed to

produce any evidence to support that reasonable finding that Defendant obtained his credit report

for an impermissible purpose.) *Id.*; *Chavez v. Premier Bankcard, LLC*, 2011 WL 5417107 (E.D.

Cal. Nov. 8, 2011) (Plaintiff case was dismissed because he failed to state a claim, as he did not

pled sufficient fact to state a claim.) (Plaintiff was given the opportunity after being served to file

a written objection to the Magistrate Judge Findings and Recommendations within Thirty (30)

days, however, Plaintiff failed to submit a written objection to the Findings and

Recommendations submitted by the Magistrate Judge.)

**FCRA § 604 – [15 U.S.C. § 1681b]**

(a) In general. Subject to subsection (c), any **consumer reporting agency** may furnish a

consumer report under the **following circumstances and no other:**

(1) In response to the order of a court having jurisdiction to issue such an order, or

a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which **it** has reason to believe

(A) intends to use the information in connection with a credit transaction

involving the consumer on whom the information is to be furnished and

involving the extension of credit to, or review or collection of **an** account of

the consumer, or

(F) otherwise has a legitimate business need for the information—

(i) in connection with a business transaction that is initiated by the

consumer;

Under 15 U.S.C. § 1681b(a)(3)(A) and (F)(i) it clearly state that this section pertains to a

"Credit Reporting Agency". *See CAPPETTA V. GC Services Ltd.* Partnership, 654 F. Supp.2d

453 (E.D. Va., 2009) ("As for "permissible purposes," Congress declared a credit reporting

agency may provide a consumer's credit report under the following circumstances and not

other.") (emphasis added).  The language quite clearly outlines the responsibility of the CRA to

determine that they are furnishing a credit report to an entity or individual who the CRA has

"reason to believe" has a legitimate purpose.

16

This section only applies to the CRA and "**its reason to believe… (F) otherwise has a legitimate business need for information**" § 1681b(a)(3)(F) (emphasis added), that the entity they are supplying with your personal info has a legal and legitimate purpose for having it and that they can be trusted to use it for no other purpose.  Obviously Defendant here cannot rely on a section of the statute that clearly does not apply to them, but thus far they have been getting away with it ever since the language was written. Why? Because the courts have "assumed" that first they have certified to the CRA that they do indeed have a permissible purpose, that there is indeed an "account" belonging to consumer, that they have somehow acquired the authority and the CRA would not give them your credit report if this were not true, and there is, where the fatal flaw lies.

The Court should reject this contention and conclude that the FCRA does not permit certified users to provide credit reports to third parties in the absence of a legitimate business need of the certified credit user and there is no evidence of such a business need in this case. Here, Defendant failed to deliver any explanations or documentations after multiple dispute letters mailed to CIC, until at least two year and threaten with a lawsuit. (*Id.* Pl. FAC ¶¶ 17, 18, 19, 21 and 40-48 and Exhibits C, D, E, F, and G-N thereto).  CIC were fully aware they did not have an application that belongs to Plaintiff, as the location that initiate an application was 5.2 miles away at a secured storage unit.

Plaintiff pray this court grants Plaintiff summary judgment as a matter of law.  Plaintiff's evidence of Defendants CIC violation of § 1681b (a) & (f) is not disputed on the facts and Plaintiff must prevail on this issue as a matter of law.  Accordingly, Plaintiff is entitled to summary judgment in his favor and against Defendant.

**B.  Because Reasonable Minds Could Not Differ in Concluding that Defendant CIC's Violation of  § 1681b(f) was Willful, Plaintiff is Entitled to Summary**

**Judgment in his Favor with Respect to said <u>Defendant's Willful Violation of §
1681b(f) as Asserted in Count I.</u>**

Section § 1681n of the FCRA provides for liability for the willful non-compliance with
its provisions as follows:

> Any person who willfully fails to comply with any
>
> requirement imposed under this subchapter with respect to any
>
> consumer is liable to that consumer in an amount equal to the sum
>
> of -
>
> (1)(A) any actual damages sustained by the consumer as a
>
> result of the failure or damages of not less than $100.00 and not
>
> more than $1,000.00; or
>
> (B) in the case of liability of a natural person for obtaining
>
> a consumer report under false pretenses or knowingly without a
>
> permissible purpose, actual damages sustained by the consumer as
>
> a result of the failure or $1,000.00, whichever is greater;
>
> (2) such amount of punitive damages as the court may
>
> allow; and
>
> (3) in the case of any successful action to enforce any
>
> liability under this section, the costs of the action together with
>
> reasonable attorneys' fees as determined by the court.

15 U.S.C. § 1681n(a).

The term "willfully" as used in § 1681n is not defined in the FCRA.  However, recent
decisions have identified the nature of the conduct which is considered to be willful under §
1681n.  In *Safeco Insurance Co. of America v. Burr*, 127 S. Ct. 2201 (2007), the United States

Supreme Court stated "[w]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." Id. at 2208.  Accordingly, the Court in Safeco equated willful conduct with either a knowing violation or "reckless disregard" for the rights of others. Id.  The Court went on to establish that "[w]hile the term recklessness is not self-defining, the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard; action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. at 2214, (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Pursuant to the Court's holding in Safeco, one who has reason to know of facts which would lead a reasonable person to realize, not only that his conduct would create an unreasonable risk of harm to another, but that said risk of harm is substantially greater than that caused by careless conduct, would be "reckless" and therefore commit a "willful" violation of the FCRA.

The Supreme Court's decision in Safeco has been applied by our Court of Appeals in the context of an FCRA action in *Whitfield v. Radian Guaranty, Inc.*, 501 F.3d 262, 266 (3d Cir. 2007). In following the Supreme Court's rejection of the position that the use of the term "willfully" in § 1681n limits liability there under to knowing violations only, the Third Circuit adopted the reckless disregard standard stated therein. Id. at *3. Accordingly, one who is charged with a willful violation of the FCRA pursuant to § 1681n will be found liable if 1) he/she knowingly violated any provision of the Act or, 2) if he/she acted with reckless disregard for the rights of consumers protected under the Act.

Here, there is evidence in the record to show (Pl. FAC Exh. A-N), pursuant to the multiple dispute correspondence sent by Plaintiff to CIC in a timely manner, as set forth above, Defendant was fully aware he did have any type of business relationship with them that would give *carte blanche* in accessing and using the reports.  CIC either know or should have known

that Plaintiff had not initiated an transaction with them, because at no time applicable did they address Plaintiff timely dispute letters and constant denial of a transaction being with them, and they provide no documentations certifying them as an authorized user upon his multiple requests, yet they continue obtaining his report repeatedly for almost two year before any documentation was provided.

## VI.    CONCLUSION

The Court should see this case starting out as an routine inspection of Plaintiff's credit report, turned out to be Fifty-Two (52) violations and a failure to explain any permissible purpose raised by Consumerinfo.com as to why they obtained Plaintiff's credit report. Although they may claim there was a legitimate business need, they have not and cannot provide any verified documentations or witnesses to explain their position.  The Defendant did not answer Plaintiff's dispute letters for many months, for nearly two Years until Plaintiff initiated litigation against them, at that point someone sent documentation that were not authenticated and could have been dismissed as not presenting any genuine issues.

For all of the reasons set forth above, Plaintiff is entitled to summary judgment in his favor under 15 U.S.C. § 1681n, and against Defendant Consumerinfo.com, Inc. with respect to their willful violation of 15 U.S.C. § 1681b(a) and (f).

DATED:

Respectfully Submitted,

Deon Thomas, In Proper Person

## CERTIFICATE OF SERVICE

I, Deon Thomas, hereby certify that a copy of the foregoing was mailed to JONES DAY,

Nalib N. Rahyar, attorney of record for Defendant Consumerinfo.com, Inc., by first class mail

addressed to:

Nalib N. Rahyar
nnrahyar@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408

Attorney for Defendant Consumerinfo.com, Inc.

I declare under perjury under the laws of the State of California that the forgoing is true

and correct.

Date: June 23, 2014


Deon Thomas