Deon Thomas, In Proper Person
14626 Red Gum Street
Moreno Valley, CA 92555
951-413-9071
dlthomas32@gmail.com

FILED

2014 JUL 10  PM 3: 45

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Deon Thomas, In Proper Person
Plaintiff

v.

Consumerinfo.com, Inc.
Defendant

)
)
)
)
)
)
)
)
)
)
)
)

Case No. ED CV 13-01712 GW
(DTBx)

PLAINTIFF DEON THOMAS RE:
RESPONSE AND OPPOSITION TO
DEFENDANT
CONSUMERINFO.COM, INC.
NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT

Date: July 31, 2014
Time: 8:30 a.m.
Courtroom: 10
Judge:  George H. Wu

**TO THE COURT, PARTIES AND THEIR ATTORNEYS:**

Plaintiff, Deon Thomas ("Plaintiff") hereby submits this Response and Opposition to Defendant Consumerinfo.com, Inc. ("CIC") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure.

///

///

///

///

///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Consumerinfo.com, Inc. ("CIC") alleges that Plaintiff Deon Thomas ("Plaintiff") First Amended Complaint ("FAC") fails for two independent reasons. First, Plaintiff admits in his deposition testimony that he cannot recall whether he enrolled in a credit monitoring service with CIC, thereby negating his willful non-compliance claim against CIC and any entitlement to damages. Second, CIC alleges nevertheless obtained Plaintiff's consumer report for permissible purposes under FCRA, as its membership records indicate that Plaintiff enrolled in CIC's credit monitoring service. Defendant's Motion for Summary Judgment must be denied. First, Defendant does not give complete recall of the deposition, as Plaintiff stated in deposition, see decl. of Nilab 76: ¶¶ 1-15 and 77: ¶¶ 1-4, "that I was not a member of Triple Advantage." (Pl. decl. ¶ 3), so their allegation of Plaintiff admitting to enrolling are false. Defendant's has mistaking at the time of Deposition, while Plaintiff were very nervous and anxious, Plaintiff statement of not recalling if he enrolled with Triple Advantage as admission, to the contrary, after Plaintiff calmed after attending deposition, he clarified it later in his Affidavit. *Adusumilli v. City of Chicago,* 164 F.3d 353, 360 (7th Cir. 1998) (Where a deposition statement is ambiguous, party may clarify it later with an affidavit. Plaintiff properly an asserted claim for willful non-compliance against CIC and any other damages, CIC never had permissible purpose to egregiously obtain Plaintiff consumer credit report. Second, CIC were aware that Plaintiff did not enroll in Triple Advantage credit monitoring, by the lack of credible and verifiable documentations presented by Mr. Williams' decl.exh. A, and the alleged enrollment were 5.2 miles away from Plaintiff's residence. Thus the reason for CIC lack of response to Plaintiffs dispute letters for nearly two years and failure to delete the information off his consumer credit reports.

1    Further, CIC did not have a permissible purpose to obtained Plaintiff's credit reports a

2    documented fifty-two (52) times with impunity. Through multiple dispute letters sent by

3    Plaintiff requesting CIC to investigate why they obtained his credit reports, CIC failed to provide

4    a subscriber certificate, contract or agreement that would grant them a permissible purpose. CIC

5    continued to obtain his credit reports even after multiple disputes for nearly two years. Plaintiff

6    continued to obtain his credit reports even after multiple disputes for nearly two years. Plaintiff

7    never received any existing copies of any type of signed or otherwise enrollment, contract and/or

8    agreement which gave CIC a business transaction to any terms of any account, which would give

9    rise to a permissible purpose to obtain Plaintiff credit report.

10   Finally, Plaintiffs asserts that the Declarations submitted by David Williams ("Mr.

11   Williams") in support of its Motion for Summary Judgment should be stricken because they are

12   based on "retrospective guess work" rather than personal knowledge and, therefore, fail to

13   comply with Federal Rule of Civil Procedure 56(c). The Exhibits provided by Mr. Williams

14   does not meet the barebones minimal proving Plaintiff enrolled with Triple Advantage credit

15   monitoring. The Exhibits did not provide any specificity or accuracy with Plaintiff's name on

16   any documents, instead are blank, dates on documents are not line with alleged enrollment date

17   to show he indeed enroll with CIC. Rule 56(c) allows the use of affidavits in connection with a

18   summary judgment motion when the affidavit is "made on personal knowledge, set[s] out facts

19   that would be admissible in evidence, and show[s] that the affiant is competent to testify on the

20   matters stated." Fed. R. Civ. P. 56(c)(4). See also *Petruzzi's IGA Supermarkets, Inc., v. Darling-*

21   *Delaware Co.*, 998 F .2d 1224, 1234 n. 9 (3d Cir. 1993) (observing that evidence introduced at

22   summary judgment stage must be "capable of being admissible at trial"). A party opposing a

23   summary judgment motion must set forth specific facts that reveal a genuine issue of material

24   fact, and "conclusory, self-serving affidavits are insufficient to withstand a motion for summary

25   judgment." *Gonzalez v. Sec'y ofthe Dep't of Homeland Sec.*, 678 F.3d 254,263 (3d Cir. 2012)

3

(citing *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 161 (3d Cir. 2009). Hearsay declarations in affidavits may be considered in the summary judgment context if the declarant would be available for trial and the declaration as set forth in the affidavit would be admissible if it were made by the declarant in open court. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990). Here, Mr. Williams decl. exhibits A, the IP address clearly does not show Plaintiff used a computer at his residence to enroll in Triple Advantage, but from a location 5.2 miles away in the city of Moreno Valley, which was not a computer used by Plaintiff.

Therefore, Plaintiff did not participate in seeking credit monitoring from CIC. Plaintiff never owned or rented the secured storage facility located 5.2 mile away from Plaintiff residence, so there could be no enrollment that would establish a business transaction with CIC. He had no contact with CIC until initiating litigation with them; through the multiple disputes they continued obtaining his credit reports. Plaintiff never went on a computer to enroll with CIC, nor did he ever see the Terms and Conditions as they alleged on July 20, 2011. As the 7th Circuit held in Stergiopoulos v. First Midwest Bancorp, Inc. 427 F.3d 1043, 1047 (7th Cir. 2005), § 1681b(a)(3)(A) can be relied upon by the party requesting a credit report , but only if the consumer if the consumer initiate the transaction.

II.    **BACKGROUND**

A.    **PLAINTIFF DID NOT ENROLL IN  CREDIT MONITORING WITH CIC OR TRIPLE ADVANTAGE**

Plaintiff never enrolled in Triple Advantage credit monitoring. (Pl. decl.¶ 1).  As admitted by CIC and according to their records given as Mr. Williams decl. exhibits A, the IP address clearly does not show Plaintiff used a computer at his residence to enroll in Triple Advantage, but from a location 5.2 miles away in the city of Moreno Valley, which was not a computer used by Plaintiff. CIC alleges that Plaintiff enrolled as a Triple Advantage member on

1    July 20, 2011, under the Terms and Agreement. However, CIC's Terms and Conditions

2    proffered by them as Id., ¶ 10, Ex. B, clearly shows a date of July 13, 2012, utterly different than

3    July 20, 2013, which makes this document unreliable. (Pl. decl. ¶ 2). The information and

4    documents provided by Defendant are conclusory and at best totally unreliable, and should not

5    be considered.

6

7        CIC began accessing Plaintiff's credit reports without Plaintiff's permission. By the time

8    Plaintiff checked his credit report, CIC had repeatedly obtained his reports without authorization.

9    They claim they refunded a credit card belonging to the Plaintiff, but it was not the Plaintiff's

10   card. Plaintiff became extremely concerned and immediately began contacting CIC about why

11   they were obtaining his credit report and claimed to be charging him money. In the exhibits

12   attached to this motion, the Court will observe the number of times that Plaintiff has (1) asked

13   for information as to why they were obtaining his credit reports, (2) requested CIC to stop

14   accessing his credit reports and (3) demanded proof that he had business relationship with CIC.

15   CIC did not have a permissible purpose to obtained Plaintiff's credit reports a documented fifty-

16   two (52) times with impunity. *Id.*

17

18       Finally, Defendant alleges that Plaintiff admits in his deposition testimony that he cannot

19   recall whether he enrolled in a credit monitoring service with CIC, thereby entirely negating his

20   willful non-compliance against CIC. Plaintiff stating the he cannot recall, is not admitting to any

21   assertion as allege by CIC. Plaintiff state in deposition, see decl. of Nilab 76: ¶¶ 1-15 and 77: ¶¶

22   1-4, that I was not a member of Triple Advantage. (Pl. decl. ¶ 3). Plaintiff asserts that if he

23   does not recall a date, time, or an event in not an admission by him. (Pl. decl. ¶ 4).

24

25       Defendant failed to propound discovery on Plaintiff and failed to provide discoverable

26   evidence to Plaintiff upon his request to them and multiple calls made, thus Defendant failed to

27

28

5

identify witnesses and documents in disclosures that would be admissible under the Federal

Rules of Evidence.

**B.  Permissible Purpose as it Pertains to CIC**

Under 15 U.S.C. § 1681b(a)(3)(A) and (F)(i) it clearly state that this section pertains to a "Credit

Reporting Agency". *See CAPPETTA V. GC Services Ltd.* Partnership, 654 F. Supp.2d 453 (E.D.

Va., 2009) ("As for "permissible purposes," Congress declared a credit reporting agency may

provide a consumer's credit report under the following circumstances and not other.") (emphasis

added).  The language quite clearly outlines the responsibility of the CRA to determine that they

are furnishing a credit report to an entity or individual who the CRA has "reason to believe" has

a legitimate purpose.  Plaintiff never enrolled in a credit monitoring service with CIC and CIC

did not have a permissible purpose for obtaining Plaintiff's consumer credit report base on the

very unreliable documents provided in Mr. Williams declaration and unresponsiveness of the

multiple dispute letters sent by Plaintiff and was not acknowledge for nearly two year.  CIC's

summary judgment should not be granted as a matter of law.

III.   **ARGUMENT**

        The court has a duty to interpret pro se pleadings liberally. See Hughes v. Rowe, 449 U.S. 5, 9

(1980), Bernhardt v. Los Angeles Cnty., 339 F.3d 920, 925 (9th Cir. 2003).  Summary judgment is

appropriate when the record demonstrates that there is no genuine dispute as to any material fact.

Fed. R. Civ. Proc. 56(a).  A fact is material if it is (1) germane to the element of the claim at issue, an

inquiry governed by the substantive law upon which the claim rests, and (2) is capable of affecting

the outcome of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is

genuine, if the quality and quantum of evidence is such that a reasonable jury could return a verdict

for the nonmoving party. *Id.*

Where, as here, the party moving for summary judgment is without the ultimate burden of persuasion at trial, the moving party satisfies its initial burden by either (1) producing evidence which negates an essential element of the challenged claim or (2) shows that the nonmoving party does not have sufficient evidence to support an essential element of the challenged claim. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F. 3d 1099, 1102 (9th Cir. 2000).   Once a moving party carries its initial burden, the nonmoving party **must** produce evidence capable of supporting a reasonable jury verdict in favor of the challenged claim. *Id.* At 1103; *Anderson,* 477 U.S. at 248.  If the nonmoving party fails to produce such evidence, summary judgment is warranted.

Summary judgment may be granted in whole or as to any issue or claim for which there is no genuine dispute of material fact.  Fed. R. Civ. Proc. 56(a) & (g).

Plaintiff prevailed on his claim that CIC willfully violated the FCRA by obtaining his consumer report for an impermissible purpose, Plaintiff proved the three elements. *Myers v. Bennett Law Offices*, 238 F.Supp.2d 1196, 1201 (D. Nev. 2002). First, he demonstrated that CIC obtained a "consumer report" from a "consumer reporting agency" as defined under the FCRA. *Id.*  Second, he showed that CIC "obtained [his] credit report under false pretenses and knowingly without a permissible purpose." *Id.* Finally, he showed that CIC acted willfully when it requested his consumer report. *Id.* Most notably here is the lack of contract whatsoever between Plaintiff and CIC, all of which were noted in the exhibits given by David Williams. Defendant's alleges that Plaintiff failure to dispute whether he enrolled in credit monitoring with CIC, to the contrary Plaintiff proved that he disputed multiple times with CIC as to whether had a contractual agreement or contract, or enrolled in CIC's program.  CIC's membership records regarding enrollment with them are very flawed and failed to show that he did enroll in credit monitoring with them.  Plaintiff was able to prove all three

elements of his claim against CIC, so as a matter of law he request the Court to grant him summary judgment.

### A. CIC OBTAINED PLAINTIFF'S CONSUMER CREDIT REPORTS WITHOUT A PERMISSIBLE PURPOSE

Plaintiff was able to show through evidence CIC obtained his Experian and Equifax consumer report without a permissible purpose. Here Defendant's unreliable evidence that CIC knowingly obtained his credit report was without a permissible purpose. Plaintiff properly asserted that CIC knowingly and willfully obtained the report without a permissible purpose § 1681b imposes liability on "[a]ny person who knowingly and willfully obtains information on a consumer. , § 1681n allows parties to bring a civil action against "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. § 1681n(a). "[A] person is proceeding (1) knowingly and willfully obtains a consumer report for a purpose that is not sanctioned by the FCRA and (2) fails to disclose its true motivation to the consumer reporting agency." *Duncan v. Handmaker*, 149 F.3d 424, 426 (6th Cir. 1998).

15 U.S.C. § 1681b(a)(3)(F)(i) makes it permissible for an agency to obtain aconsumer report when it has a "legitimate business need . . . in connection with a business transaction that is initiated by the consumer." In Duncan the Sixth Circuit noted, "While a lawsuit occasionally may give rise to a 'legitimate business need' for a consumer report, trial preparation generally does not fall within the scope of § 1681b." 149 F.3d at 427 (internal citation omitted). The Duncan court continued by explaining that "[i]n the limited instances where courts have allowed parties to obtain consumer reports . . . for use in litigation, the dispute typically has related to the collection of a debt owed by the consumer." Id. at 428. Here, the underlying lawsuit for which CIC obtained Plaintiff's credit reports did not concern a CIC attempting to collect a debt from

Plaintiff; instead, Plaintiff sued CIC because he never enrolled in credit monitoring with CIC to where they can obtain his report.

### 1. Plaintiff's Undisputed Evidence Does Show that CIC Obtained Plaintiff's Consumer Credit Report Without A Permissible Purpose.

Plaintiff provided evidence to establish that he did not enroll in any programs with CIC, which would establish a business relationship. Plaintiff proved the elements of his claim against CIC for obtaining his consumer credit report fifty-two (52) times without a permissible purpose as required by 15 U.S.C. § 1681b. Plaintiff never admitted and denies that any applications were initiated by him to enroll in a credit monitoring with CIC. (Pl. decl. ¶ 5). Defendant's provided evidence by David William's ("Mr. Williams") declaration also proves Plaintiff's assertions that he did not have an established business relationship with CIC. Defendant alleged that a showing of a permissible purpose is a complete defense. *Rydell v. Servco Auto Windward*, 2011 U.S. Dist. LEXIS 130084 (D. Haw. Nov. 9, 2011), at *7 (D. Haw. Nov. 9, 2011) (quoting *Stonehart*, 2001 U.S. Dist. LEXIS 11566, at *3); see also *Edge v.Professional Claims Bureau, Inc.*, 64 F. Supp. 2d 115 (E.D.N.Y. 1999); 15 U.S.C. § 1681b(f). However, in the *Rydell* case he admitted to completing a credit application to extend credit and involve[ed] the extension of credit to him with *Servco*. Here, Plaintiff never completed an application or enrollment application with Triple Advantage. So, Defendant use of Rydell case is not the same, and citation is not valid. Defendant case cited were improper and has no tangible bearing on the subject matter of this litigation.

Defendant alleged multiple times that Plaintiff enrolled with Triple Advantage, while in fact they were fully aware he did not enroll with them, as can be seen in the Declaration of Mr. Williams and the Exhibits prove Plaintiff did not have an establish business relationship with them as established by: First, Plaintiff never had a secured storage at the location according to

the longitude and latitude sheet that was 5.2 mile away from his home. (Mr. Williams' decl¶ 9, Exh. A), and (Pl. Affidavit ¶ 28). The Storage location is a locked gate, where only people who have a password can enter. (Pl. Affidavit ¶ 25).

Secondly, The Terms and Conditions in contradictory to what they are relying upon. They allege that Plaintiff enrolled in Triple Advantage on July 20, 2011, under the Terms and Conditions, however in Mr. Williams' declaration he state, "A true and correct copy of CIC's Terms and Conditions which are the same or substantially similar to how they would have appeared on Experian.com on July 20, 2011 is attached hereto as Exhibit B. (Mr. Williams decl. ¶ 10, Exh. B). The Terms and Condition as Exh. B. of Mr. Williams' declaration has a date of July 13, 2012, and CIC alleges Plaintiff enrolled in Triple Advantage on July 20, 2011. Mr. Williams provided unreliable information which cannot be verified nor can be relied upon as to Plaintiff agreeing toany alleged Terms and Conditions. (Pl. decl. ¶ 6).

Thirdly, Defendant's labeled a document as landing page that was seen to be blank, without any names visible, specifically does not have Plaintiff's name, to establish he enrolled with CIC to prove a business relationship. (Mr. Williams' decl. ¶ 11, Exh. C) Mr. Williams stated, "landing page which is substantially similar to how it would have appeared on experian.com on July 20, 2011 is attached hereto as Exhibit C." under no uncertain terms can Mr. Williams' verify this document were in fact Plaintiff's. (Pl. decl. ¶ 7).

Furthermore, Mr. Williams state, "A true and correct copy of the Experian.com order page "Step 1" as it appears on the date of this declaration is attached as Exhibit D. The "Step 1" order page on the date of Plaintiff's transaction would have been nearly identical to the order page found on Exhibit D." (Mr. Williams decl. ¶ 14, Exh. D). The documentation as seen on Mr. Williams decl., Exh. D and Exh. E , pages were blank and does not have Plaintiff's name or any other identifiable information pertaining to him, and has a copyright date of 2013 not 2011, so

10

1  nothing that establish Plaintiff signed up with CIC or any other entity. (Pl. decl. ¶ 8).

2  Additionally, Mr. Williams further stated, "As a Triple Advantage member, Mr. Thomas

3  was presented with, and correctly answered, the out-of-wallet questions on the authentication

4  page prior to completion of the order process, confirming his identity. A true and correct copy of

5
6  CIC's current "out-of-wallet" questions is attached to this declaration as Exhibit F. (Mr.

7  Williams decl. ¶ 18, Exh. F). The document labeled as out-of-wallet questions displayed in Mr.

8  Williams declaration as Exh. F, were questions and answers that Plaintiff has never seen before

9  nor does the document accurately identify Plaintiff within it. The document labeled exh. F. is

10  nothing more than a computer generated pages that are not in sequential order, omitted pages,

11
12  and does not identify CIC's name. (Pl. decl. ¶ 9). This document was created to confuse the

13  Court and Plaintiff.

14  CIC were aware that Plaintiff did not enroll in Triple Advantage, by the lack of credible

15  and verifiable documentations presented by Defendants as exhibits, as knowing the alleged

16  enrollment was completed 5.2 miles away from Plaintiff's residence. Thus the reason for CIC

17
18  lack of response to Plaintiff's dispute letters for nearly two years and failure to delete the

19  information off his consumer credit reports. Defendants were fully aware that Plaintiff

20  completely denies to have ever enrolled with CIC or any other entity associated with them. So,

21  since Plaintiff disputed for nearly two years with CIC, they cannot rely on a presumption that

22  Plaintiff enrolled with Triple Advantage or accepted their out of date Terms and Conditions; as

23
24  such Plaintiff gives his rebuttal. Also, given that facts that any alleged enrollment took 5.2 miles

25  away from Plaintiff's resident.

26  Defendant made an attempt to rely upon a case that has no relevance to this matter. *Uhlig*

27  *v. Berge Ford, Inc.*, 257 F.Supp.2d 1228, 1231 (D. Ariz. 2003). In *Uhlig,* dealt with the Plaintiff

28  willing paying a balance for a vehicle she purchased with a personal check, also Plaintiff made a

11

conditional verbal agreement with a sales person that any transaction with the car company would be made with no credit check. The Court of *Uhlig* case denied Defendant's Summary Judgment. The *Uhlig* case is quite distinguishable from this present case, Plaintiff never made any such agreement with CIC that could enter him in a business need, because he never enrolled in a program with them that would be implied as a business relationship nor did he use a personal check, which makes these cases significantly different. Defendant case cited were improper and has no tangible bearing on the subject matter of this litigation.

In light of the uncertainty of any underlying transaction, Plaintiff argues that Mr. Williams Declarations and Exhibits do not present any kind of "verifiable facts" necessary that proves Plaintiff and CIC had a business relationship, as none of the documentations can demonstrate or prove a legitimate business relationship establishing the need to access the consumer reports of the Plaintiff, nor that Plaintiff enrolled in Triple Advantage, as such Plaintiff summary judgment should be granted.

## 2. **Plaintiff Claim of Written Dispute Shows CIC Obtained his Consumer Report and documents provided by CIC are Unreliable**

Defendant alleges the Plaintiff signed up for Triple Advantage Credit Monitoring, he initiated a legitimate business and contractual relationship with CIC, which gave CIC a permissible purpose to access Plaintiff's consumer report under the "legitimate business needs" exception of § 1681b(a)(3)(F)(i). Yet, Defendant cannot establish that Plaintiff enrolled or agreed to enroll with Triple Advantage credit monitoring, as the insufficient documentation provided by Defendant as evidence does not verify any name, especially Plaintiff's, as documents were blank, as to the Terms and Conditions proffered as evidence belonging to Plaintiff were not the date they say he, Plaintiff, enrolled allegedly on July 20, 2011. (Pl. decl. ¶ 10). Plaintiff never initiated a business relationship

12

with Defendant. Plaintiff did not enroll with Triple advantage monitoring service, upon discovery of CIC obtaining his consumer credit report he immediately disputed with the credit reporting agency regarding CIC and with CIC accessing his credit report without a permissible purpose. After multiple disputes with the credit reporting agency, CIC continued to obtain his, Plaintiff's, credit report. CIC never had "a reason to believe" *id., which only pertains to the credit reporting agency,* they had a permissible purpose, as the alleged enrollment came 5.2 miles away from his residence. (Pl. Affidavit ¶¶ 24-28).

Plaintiff is not merely stating objections, it is clearly seen in CIC's exhibits that Defendant and Plaintiff never had a contract, agreement or enrollment with CIC to establish a business need, as described in 15 U.S.C. § 1681b(f)(i). Plaintiff presented evidence to establish he did not have a relationship with CIC or any other agency associated with them.

Defendant made an attempt to rely upon a case that has no relevance to this matter. *Landeis v. Future Ford*, 2:04-CV-2733-MCE-PAN, 2006 U.S. Dist. LEXIS 39826 (E.D. Cal. June 14, 2006). This case dealt with a Plaintiff willing paying a balance for a vehicle she purchased with a personal check, also Plaintiff made a conditional verbal agreement with a sales person that any transaction with the car company would be made with no credit check. Here, Plaintiff never made any such agreement with CIC, because he never enrolled in a program with them that would be implied as a business relationship nor did he use a personal check, which makes these cases utterly different.

Plaintiff never had a secured storage at the location according to the longitude and latitude sheet that was 5.2 mile away from his home. *See* (SUF ¶ 29; Plaintiff Affidavit ¶ 28). Defendants records and exhibits indicates impropriety as to Plaintiff's name not identified on the document labeled as landing page, date of the alleged Terms and Condition are off from the alleged enrollment date, longitude and latitude provided were 5.2 miles away from Plaintiff's residence, document labeled as "out-of-wallet" was nothing more than a computer generated

13

1  pages that are not in sequential order, omitted pages, and does not identify CIC's name nor

2  Plaintiff's. (Pl. decl. ¶ 11).

3        Plaintiff was never in a transaction with CIC, they obtained Plaintiff's information

4  through surreptitious techniques. Without any verifiable proof of a credit transaction that

5

6  Plaintiff (1) was involved in or otherwise initiated and (2) that Defendant acted pursuant to in

7  obtaining Plaintiff's credit report, Defendant's argument that it acted lawfully in obtaining

8  Plaintiff's credit report is incorrect as a matter of law. See *Stergiopoulos & Ivelisse Castro v.*

9  *First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005) ("A third party cannot troll for

10  reports, nor can it request a report on a whim.").

11

12  ### 3) **Plaintiff Established Willful Violation**

13        Plaintiff asserted facts demonstrating CIC's knowing noncompliance of the FCRA or

14  reckless disregard of the requirements of the FCRA sufficient to demonstrate a willful violation.

15  As stated by the Supreme Court in *Safeco Ins. Co. of America v. GEICO General Ins. Co.*, 127

16  S.Ct. 2201, 2208-09 (2007), the phrase "willfully fails to comply" in § 1681n(a) reaches both

17

18  knowing and reckless violations of the FCRA. The Supreme Court further explains that "a

19  company subject to the FCRA does not act in reckless disregard of it unless the action is not only

20  a violation under a reasonable reading of the statute's terms, but shows that the company ran a

21  risk of violating the law substantially greater than the risk associated with a reading that was

22  merely careless." Id. at 2215. Here, CIC ran a risk by providing documentation as exhibits that

23  are clearly unreliable, masquerading as Plaintiff enrolling with Triple Advantage monitoring

24

25  service.

26        First look to the plain language of the relevant provision of the FCRA. *See Barnhart v.*

27  *Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002) ("[C]ourts must presume that a legislature says

28  in a statute what it means and means in a statute what it says there. When the words of a statute are

14

1  unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (quoting *Conn.*

2  *Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).  At no time material had Plaintiff ever applied

3  for, used, nor had knowledge of any account transaction prior to Defendant being sued by Plaintiff in

4  small claims court. *See* (SUF ¶ 31; Plaintiff Affidavit ¶ 31).

5

6  Defendant's knew Plaintiff did not enroll with Triple Advantage, fabricated the identity,

7  and claim that they possessed Plaintiff's credit card, address, IP address and social security

8  number, all of which are unfounded because Plaintiff was never a party to any business

9  transaction with CIC. *See* (SUF ¶ 32; Plaintiff Affidavit ¶ 32).  Even the last resort before

10  having this matter before this Court and nearly two years of disputing, Plaintiff received a

11  decision in Court on October 1, 2013, stating "The primary reason for the decision for the

12  Plaintiff was based on the lack of contractual relationship between Plaintiff and Defendant, a

13  lack of permissible purpose for Consumerinfo.com's inquiries, and the lack of responsiveness to

14  Plaintiff's repeated inquiries as to why Consumerinfo.com was making repeated inquiries.  The

15  court received insufficient proof that Plaintiff enrolled in a program for crediting monitoring

16  products with Consumerinfo.com.".  Id. ¶ 23.  This decision against CIC not having a

17  permissible purpose, show have disregard of the Law.

18

19

20  Plaintiff contends that there are no genuine issues of material fact and therefore is entitled

21  to judgment as a matter of law on his claim.

22  **4) CIC Failed to Meet the Obligation Under FRCP 26 and 37;**
    **CIC Failed to Disclose Information, documentations therefore**
23  **Evidence is Barred**

24

25  CIC alleged that Plaintiff enrolled in a credit monitoring service with Triple Advantage,

26  and has submitted documentation as evidence without Plaintiff's name anywhere on these

27  documents.  Plaintiff has delivered multiple disputes to CIC, also to the credit reporting agency,

28

15

informing them that they should delete the inquiry because they had no permissible purpose for obtaining his reports, they did not respond until litigations. Defendant failed to disclose such evidence to the Plaintiff before filing its motion for summary judgment. See Mr. Williams's declaration Ex. A-F. Plaintiff submits his objections to evidence provided by Mr. William, pursuant to Rule 37(c).

Mr. Williams declaration testimony must be disregarded as conclusory and lacking any basis in personal knowledge. Rule 56(e) of the FRCP requires that Affidavit/Declaration offered in motion for summary judgment be "made on personal knowledge," that they "set forth facts that would be admissible in evidence." And that they "show affirmatively that the affiant/declarant is competent to testify to the matters stated therein." Although personal knowledge can include inferences and opinions of the affiant/declarant, such inference must nonetheless be substantial by specifics facts. *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878. 887 )7th Cir. 1998). In Drake, the Seventh Circuit found no abuse of discretion where a magistrate judge excluded portions of an affidavit similar to those at issue here.

There is no meet-and-confer requirement prior to bringing a motion to exclude evidence under Rule 37(c). *See, e.g., Fulmore v. Home Depot, U.S.A., Inc.*, 423 F. Supp. 2d 861, 871–72 (S.D. Ind. 2006) ("The Advisory Committee Notes to both the 1993 and 2000 Amendments to Rule 37 make clear that Rule 37(c) operates independent of any motion required by Rule 37(a). Rule 37(c) simply does not require conferral."). The rule applies not only at trial but also to any motion, such as a motion for summary judgment, or a hearing. It applies both to information not disclosed and to witnesses

Here, Mr. Williams made multiple conclusory statements, and plaintiff objects to Mr. Williams decl.: ¶ 8, which refer to CIC's customer records further indicate that Mr. Thomas contacted CIC's customer service department regarding his membership on or about the

16

following dates: 7/25/11, 7/26/11, 8/1/11, 9/21/11, 11/11/11, 1/22/12, 4/26/13, 5/7/13, and

Plaintiff states that Rule 37 (c) of FRCP bars CIC from relying on these dates because it was not

properly disclosed in accordance to Rule 26(a). Plaintiff will object to ¶¶ 9 through 21because

each paragraph makes generalized, hearsay, speculative and conclusory statements about a

customer, not anyone specific, especially the Plaintiff, enrolling in a program with Triple

Advantage, such statements as: ¶ 9 "**showing the location of this IP address as Moreno**

**Valley.**" Here, exh. A was 5.2 miles away from Plaintiff's residence; ¶ 10 **"Terms and**

**Condition which are the same or substantially similar to how they would have appeared on**

**Experian.com on July, 20, 11."** Here , exh B. the date on the Terms and Condition is July 13,

2012.; ¶11, **"A true and correct copy of the experian.com landing page which is**

**substantially similar to how it would have appeared on July 20, 2011."** Here, exh. C appear

to be a front page and did not identify Plaintiff; ¶12 **"A consumer visiting the Experian.com**

**landing page may view the full text of the Terms and Conditions before initiating the**

**enrollment."** Here, he is referring to a consumer, not Plaintiff; ¶13 **"At all times from July**

**2011 through the present, to consummate a transaction on any of CIC's websites, a**

**consumer was required to complete a multi-step order process."** Here, he makes a

generalized statement about dates and consumers, not specifying Plaintiff; ¶14 **"the "step 1"**

**order page on the date of Plaintiff's transaction would have been nearly identical to the**

**order page found in exh. D."** Here, exh. D has a date of 2013 for the copyright, its blanks, no

names, especially Plaintiff were not identified; ¶15 **"To continue the order process, the**

**consumer was required to enter his or her name, email and address information and click a**

**button labeled "Continue." The consumer thereafter proceeded to order page "Step 2."**

**The consumer was then prompted to create a username and password and to enter his or**

**her Social Security number and date of birth. The consumer was also prompted to enter his**

or her credit card information. A true and correct copy of a experian.com order page "Step 2" as it appears on the date of this declaration is attached as Exhibit E. The "Step 2" order page on the date of Plaintiff's transaction would have been identical to the order page found in Exhibit E." Here, he's referring to a consumer ie. "his or her", not Plaintiff, exh. E has a date of 2013 within one of the drop-down boxes, copyright date of 2013, its blank, no names, especially Plaintiff were not identified.

"The consumer will not be provided with his/her credit information until he/she accurately answers the "out-of-wallet" questions that are presented on the authentication page. As a Triple Advantage member, Mr. Thomas was presented with, and correctly answered, the out-of-wallet questions on the authentication page prior to completion of the order process, confirming his identity. A true and correct copy of CIC's current "out-of-wallet" questions is attached to this declaration as Exhibit F." Here, The document labeled as out-of-wallet questions displayed in Mr. Williams declaration as Exh. F, were questions and answers that Plaintiff has never seen before nor does the document accurately identify Plaintiff within it. The document labeled exh. F. is nothing more than a computer generated pages that are not in sequential order, omitted pages, and does not identify CIC's name. (Pl. decl. ¶ 9).

As previously explain, Rule 37(c) provides in relevant part that a party who, without substantial justification fails to disclose information required by Rule 26(a) is not, unless such a failure is harmless, permitted to use the evidence at trial or on a motion. Rule 26(a)(1)(B) requires a party to provide to another party, with or without a formal discovery request, a copy or description of all documents and data compilations in the party's possession, custody or control that it may use to support its claims or defenses, unless such information would be used solely for impeachment. The Court need not determines whether CIC had a substantial justification for

1  failing to disclose the evidence A-F.  CIC summary judgment should not be granted as a matter

2  of Law.

3  **IV.    CONCLUSION**

4           Defendant failed to FRCP and Local Rule by not submitting a Separate Statement of
5
6  Undisputed/Uncontroverted Facts and Conclusion of Law, so the summary judgment should not

7  be considered and denied.  For all of the reasons set forth above, Plaintiff respectfully request

8  that this Court Deny CIC's Motion for Summary Judgment.

9  DATED:
                July 10, 2014
10                                                        Respectfully Submitted,

11

12

13                                                        Deon Thomas, In Proper Person

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF DEON THOMAS RE: REPLY TO CONSUMERINFO.COM, INC. OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I, Deon Thomas, hereby certify that a copy of the foregoing was mailed to JONES DAY,

Nalib N. Rahyar, attorney of record for Defendant Consumerinfo.com, Inc., by first class mail

addressed to:

Nalib N. Rahyar
nnrahyar@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408

Attorney for Defendant Consumerinfo.com, Inc.

I declare under perjury under the laws of the State of California that the forgoing is true

and correct.

Date: July 10, 2014

Deon Thomas