UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 13-1712-GW(DTBx) | Date | September 11, 2014 |
| Title | Deon Thomas v. Consumerinfo.com, Inc. | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

None Present                          Nilab N. Rahyar

PROCEEDINGS:   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT CONSUMERINFO.COM, INC. [23];

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]

The Court's Tentative Ruling is circulated and attached hereto. Plaintiff, in pro per, is not present. For reasons stated on the record, the above-entitled motions are continued to **September 25, 2014 at 8:30 a.m.**

Plaintiff is ordered to appear, on September 25, 2014, and show cause why this action should not be dismissed for failure to prosecute.

cc: Pro Se Plaintiff

: 06

Initials of Preparer   JG

**_Deon Thomas v. Consumerinfo.com, Inc._**; Case No. CV-13-1712-GW(DTBx)
Tentative Rulings on Continued Hearing on Cross-Motions for Summary Judgment

Plaintiff Deon Thomas ("Thomas") contends that Defendant Consumerinfo.com, Inc. ("CIC") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f), by repeatedly obtaining his credit reports without a legally-permissible purpose. *See* First Amended Complaint ("FAC"), Docket No. 12, ¶¶ 49-61. Thomas and CIC recently filed cross-motions for summary judgment which came on for hearing on July 31, 2014. *See* Docket Nos. 23, 29. Instead of ruling on the motions at that point, the Court asked the parties to submit supplemental evidence and corrected filings. *See* Docket No. 41. Those additional materials – plus a variety of materials the Court did not request – are now before the Court. *See* Docket Nos. 42-61.[1] For the reasons discussed below, the Court would DENY Thomas's motion and GRANT-IN-PART and DENY-IN-PART CIC's motion.

**I. Background**

In August 2011, Thomas obtained a credit report from Experian. The credit report showed that CIC had accessed Thomas's credit reports multiple times over the preceding month. Plaintiff Deon Thomas's Statement of Undisputed Facts ISO Summary Judgment ("TUF" or "TUFs"), Docket No. 24, at 1-2. Thomas contends that he sent dispute letters to CIC in August 2011, April 2012, and November 2012 explaining that he "never had any business" with CIC and demanding that CIC stop accessing his credit reports. TUFs 2-4.[2] Nonetheless, CIC continued accessing Thomas's credit reports until April 2013. TUF 1. In total, CIC accessed Thomas's Experian or Equifax credit reports 52 times between July 2011 and April 2013. *Id.* Thomas asserts that he never had any relationship with CIC during this time. As a result, Thomas contends that CIC violated 15 U.S.C. § 1681b each time it accessed his credit reports. *See* Plaintiff's Motion for Summary Judgment, Docket No. 23.

CIC disagrees, asserting that it was entitled to access Thomas's reports because Thomas subscribed to CIC's "Triple Advantage" credit monitoring program. Defendant CIC's Statement of

---

[1] Though the Court only asked Thomas to file a "Local Local Rule"-compliant response to CIC's Statement of Genuine Disputes, he filed four declarations, several versions of his Statement of Genuine Disputes and response to CIC's Statement of Genuine Disputes, an opposition to CIC's motion to file documents under seal, and a Motion to Strike a declaration that the Court requested. Docket Nos. 48-56. While the Court has reviewed these materials in preparing this Tentative Ruling, it largely relies on earlier docket numbers to avoid confusion. Also, as the Court has already granted CIC's Application to File Documents Under Seal, Thomas's opposition is MOOT. The Motion to Strike is DENIED and the hearing date is VACATED. Giving Thomas the benefit of the doubt, the Court construes the Motion to Strike as *objections* to David Williams's supplemental declaration, which the Court has noted. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("Rule 12(f) provides that 'the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' Under the express language of the rule, only pleadings are subject to motions to strike. The appellees have cited no cases that have construed F.R.Civ.P. 12(f) as allowing a district court to strike material not contained in the pleadings of the case."); *United States v. Crisp*, 190 F.R.D. 546, 550-51 (E.D. Cal. 1999) (reasoning that, while a "motion to strike is limited to pleadings," a "motion to strike matters that are not part of the pleadings may be regarded as an invitation by the movant to consider whether proffered material may properly be relied upon").

[2] CIC contends that it never received these letters. *See* Declaration of David Williams ISO CIC's Motion for Summary Judgment ("Williams Decl."), Docket No. 29-2, ¶ 21.

Undisputed Facts ISO Summary Judgment ("CUF" or "CUFs"), Docket No. 30-1, at 3. Triple Advantage is a subscription-based service that provides consumers with access to their credit reports, credit scores, and daily credit monitoring. CUF 1; Williams Decl. ¶ 3. Before enrolling in the service, subscribers are required to provide detailed personal information and answer "out-of-wallet" identifying questions (i.e., questions that cannot be answered by information contained in a wallet). CUF 4. They are also required to accept the Triple Advantage Terms and Conditions, which state:

> You understand and agree that by submitting your order you are providing "written instructions" in accordance with the Fair Credit and Reporting Act, as amended ("FCRA"), for CIC to obtain information from your personal credit profile from Experian or any other credit reporting company . . . . You authorize CIC to access your credit profile . . . to provide credit monitoring, credit reporting, credit scoring, credit score monitoring and tracking . . . [and to perform any] other functions related to providing the product(s) that you have ordered or may order, including to verify your identity or any certification that you may be required to make.

CUF 7; Williams Decl. ¶ 10, Ex. B at 1 ("Page 9"). CIC's records show that, in July 2011, someone enrolled for Triple Advantage credit monitoring using Thomas's birth date, social security number, address, zip code, and out-of-wallet responses. CUF 5; Williams Decl. ¶¶ 6-7, 18.[3] The registrant used a computer with an IP address located in Moreno Valley, California, where Thomas lives. Williams Decl. ¶ 9. However, Thomas vehemently denies that he ever registered for any CIC product. *See, e.g.,* TUFs 14, 27, 30-32. In fact, Thomas contends that he and CIC never had "a relationship of any kind," and that CIC "fabricated [his] identity" in order to make it look like he enrolled in Triple Advantage credit monitoring when, in fact, he did not. *See, e.g.,* TUFs 14, 32.

## II. Legal Standard

Summary judgment is proper where a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To satisfy its burden at summary judgment, a moving party *with* the burden of persuasion – here, Thomas – must establish "beyond controversy every essential element of its [claim or defense]." *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); William W. Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial (2014) § 14:126, Ch. 14-D. By contrast, a moving party *without* the burden of persuasion – here, CIC – "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

"If the party moving for summary judgment meets its initial burden," the nonmoving party must, "by affidavit or as otherwise provided in Rule 56," affirmatively identify "specific facts

---

[3] At the last hearing, the Court asked CIC to submit records showing that Thomas's credit card was used to enroll in the Triple Advantage account at issue. CIC submitted, under seal, a supplemental declaration and exhibits purporting to show Thomas's credit card was used to enroll in the account. *See* Confidential Declaration of David David Williams ISO CIC's Motion for Summary Judgment ("Williams Supp. Decl."), Docket No. 47, ¶ 3 & Ex. A (highlighted in red). While the new evidence shows that *a* credit card was used to enroll in the account, CIC has not produced evidence showing the credit card was *Thomas's*. Thus, the new submission was unhelpful in this regard.

showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted). Establishing a genuine issue for trial means doing "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

With that said, courts do not make credibility determinations or weigh conflicting evidence at the summary judgment stage, and must view all evidence and draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Serv.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *Hrdlicka v. Reniff*, 631 F.3d 1044 (9th Cir. 2011); *Motley v. Parks*, 432 F.3d 1072, 1075 & n.1 (9th Cir. 2005). When "parties submit cross-motions for summary judgment, each motion must be considered on its own merits," and courts must consider "the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134-36 (9th Cir. 2001) (citations and quotations omitted, punctuation altered).

### III. Analysis

The FCRA prohibits obtaining a consumer report except for a permissible purpose. *See* 15 U.S.C. § 1681b(f). A company that willfully obtains a consumer report without a permissible purpose may be liable for actual, statutory, and punitive damages. *Id.* § 1681n(a)(1)(A), (a)(2). To prevail on an impermissible purpose claim, a plaintiff must prove that: (1) the defendant obtained his consumer report,[4] (2) the defendant lacked a permissible purpose for obtaining the report, and (3) the defendant "willfully" or "negligently" violated the statute. *See id.* §§ 1681b(f), 1681n(a)(1), 1681o(a); *Myers v. Bennett Law Offices*, 238 F.Supp.2d 1196, 1201 (D. Nev. 2002) (outlining three elements of an impermissible purpose FCRA claim). CIC contends summary judgment is warranted because Thomas cannot establish either the second or third requirement. Defendant CIC's Motion for Summary Judgment ("Def.'s MSJ"), Docket No. 29, at 6:1-3. The Court largely disagrees. Because the facts material to both requirements are in dispute, summary judgment is not appropriate.

### A. *Whether CIC Had a Permissible Purpose for Obtaining Thomas's Credit Report*

The permissible purposes for which a company may request a credit report are found in 15 U.S.C. § 1681b(a). As relevant here, they include: (1) obtaining a credit report "[i]n accordance with the written instructions of the consumer to whom it relates," *id.* § 1681b(a)(2),[5] and (2) obtaining a credit report for a "legitimate business need . . . in connection with a business transaction that is initiated by the consumer," *id.* § 1681b(a)(3)(F)(i). Relying on essentially the same set of facts, CIC

---

[4] The FCRA defines a "consumer report" to include things beyond ordinary credit reports, although credit reports are no doubt "consumer reports" under the FCRA. *See* 15 U.S.C. § 1681a(d). Because this case only concerns credit reports issued by the major reporting agencies, the Court uses the more specific term "credit report" instead of "consumer report" throughout its discussion.

[5] CIC repeatedly cites *Spencer v. Spencer*, 52 Fed.Appx. 874 (9th Cir. 2002) when discussing 15 U.S.C. § 1681b(a)(2). As a pre-2007 unpublished Ninth Circuit case, *Spencer* "may not be cited to [this court]." *See* Ninth Cir. R. 36-3(c); *see also* Fed. R. App. P. 32.1(a).

contends that it was permitted to obtain Thomas's credit reports for either or both of these purposes.

In essence, CIC contends that Thomas signed up for its Triple Advantage credit monitoring product and, in the process, agreed to Terms and Conditions. *See* quoted language at page 2, *supra*; Williams Decl. ¶ 10, Ex. B at 1 ("Page 9"). By agreeing to these Terms and Conditions, CIC contends, Thomas gave "written instructions" permitting CIC to obtain his credit report. *See* 15 U.S.C. § 1681(a)(2). Moreover, because parties are "free to contractually define whether or not a 'legitimate business need' exists," *see Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2nd Cir. 1999), and because, here, the parties agreed CIC could obtain Thomas's credit reports in order to provide its Triple Advantage credit monitoring service, CIC had a "legitimate business need" for accessing his reports. *See* 15 U.S.C. § 1681b(a)(3)(F)(i). Thus, CIC contends, under § 1681b(a)(2), § 1681b(a)(3)(F)(i), or both, it had a permissible purpose for obtaining Thomas's credit reports.

The problem with CIC's argument is that both permissible purposes assume that Thomas actually signed up for Triple Advantage credit monitoring – a fact Thomas disputes. Though not a model of clarity, Thomas's Statement of Undisputed Facts, Statement of Genuine Disputes, and supporting declarations emphatically deny that he ever signed up for Triple Advantage credit monitoring. *See, e.g.,* TUFs 14, 27, 30-32. Indeed, Thomas contends that he and CIC never had "a relationship of any kind," and that CIC "fabricated [his] identity" in order to make it appear that he enrolled in Triple Advantage credit monitoring – an appearance which was "unfounded because [Thomas] was never a party to any business transaction with CIC." TUFs 14, 32.

CIC disputes Thomas's claim he never enrolled in Triple Advantage credit monitoring,[6] citing its enrollment records, which show that Thomas's social security number, birth date, address, and zip code were provided during the enrollment process, and the fact that so-called "out-of-wallet" questions were answered correctly for his account. CUF 5; Williams Decl. ¶ 18. CIC also offers evidence showing that computer used to enroll in the disputed Triple Advantage account had an IP address located in Moreno Valley, California, where Thomas lives. Williams Decl. ¶ 9.

While CIC's evidence may be persuasive, however, the fact remains that Thomas disputes that he ever enrolled in Triple Advantage, disputes that the IP address used to register the account belongs to one of his computers, *see* TUF 25, and contends that CIC "fabricated" his enrollment information in order to create the false impression that he enrolled in the Triple Advantage service. TUF 32. Including his own declaration, Thomas has submitted sufficient evidence to establish a genuine dispute about whether he actually enrolled in Triple Advantage credit monitoring. *See* Fed. R. Civ. P. 56(c) (explaining that declarations may be used to establish facts in support of and in opposition to summary judgment motions). Because resolving this factual dispute effectively requires a credibility determination, it is not something that can be done on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1054-55 (9th Cir. 2008) ("This Court, and others, have long recognized that summary judgment is singularly inappropriate where credibility is at issue") (citations omitted); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (explaining that courts cannot disregard summary judgment declarations

---

[6]Literally – CIC identifies Thomas's denial that he enrolled in Triple Advantage credit monitoring as "disputed." *See, e.g.,* Defendant CIC's Statement of Genuine Disputes ("CGDs"), Docket No. 32, at 14, 32.

that comply with Rule 56 simply because they are self-serving); *United States v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 490-92 (9th Cir. 1990) (finding that specific testimony by single declarant created triable issue of material fact even though the declaration was self-serving and opposed by significant contradictory evidence); *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 & n.6 (9th Cir. 2008) ("We do not consider the NDA, allegedly signed by Gagnon, because Gagnon contests its validity and argues that his signature was forged, creating a factual dispute inappropriate for resolution on summary judgment"); *Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F.Supp.2d 697, 707 (N.D. Cal. 2012) ("While such evidence strongly suggests that Cacchione did in fact sign the ACA . . . Cacchione unequivocally states in his declaration and deposition that he did not . . . . Because Cacchione's denial creates an issue of fact regarding whether Cacchione's signature on the ACA is a forgery, the Court finds that resolution of this issue is inappropriate at the summary judgment stage"); *Bass v. Ameriquest Mortg. Co.*, No. 09-CV-476-LEK(RLPx), 2011 U.S. Dist. LEXIS 148729, at *46 (D. Haw. Dec. 27, 2011) ("Again, while this Court recognizes that AMC has gone to great lengths to counter Plaintiff's forgery allegations, the ultimate determination of whether AMC forged Plaintiff's signature on some of the loan documents requires a credibility determination, and this Court cannot make credibility determinations on a motion for summary judgment"). Thus, CIC is not entitled to summary judgment on the ground that it had a "permissible purpose" for obtaining Thomas's credit report.

### B. *Whether CIC Willfully Violated 15 U.S.C. § 1681(f)*

CIC is also not entitled to summary judgment on the ground that it did not willfully violate the FCRA. To prove a willful FCRA violation, a plaintiff must show that the defendant violated the statute either knowingly or recklessly. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007) ("The standard civil usage thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations"). Thus, the relevant willfulness question is whether the defendant's actions were taken with knowing or reckless disregard for its FCRA obligations. *Willes v. State Farm Fire & Cas. Co.*, 512 F.3d 565 (9th Cir. 2008). A plaintiff is not required to show actual harm when suing for willful violations, *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412–13 (9th Cir. 2014), though actual harm is a required showing for negligent violations, *e.g., Banga v. Experian Info. Solutions, Inc.*, 473 Fed.Appx. 699, 700 (9th Cir. 2012) ("The district court properly granted summary judgment on [Plaintiff's] claims for negligent violations under § 1681o of the Act because she failed to raise a triable dispute as to whether defendants' conduct resulted in actual damages").[7]

CIC contends Thomas cannot show that it willfully obtained his credit reports for a non-permissible purpose because, even *if* Thomas did not himself enroll in Triple Advantage, CIC had a reasonable basis for believing he did. Reply, Docket No. 39, at 4-5. CIC contends that it maintains stringent enrollment standards for its Triple Advantage service in order to ensure it only provides credit monitoring for the person who appears to be requesting the service. CUF 4. And it is undisputed that whoever enrolled in the Triple Advantage account at issue "correctly answered the stringent out-of-wallet security questions" and correctly "provided [Thomas's] identifying

---

[7] Because Thomas has not argued that CIC was negligent in violating the FCRA or offered any evidence to support a showing of actual damages, and because the FAC only cites the willful non-compliance section, not the section for negligent non-compliance, FAC at 10:13-19, the Court assumes he is proceeding on a willfulness theory.

information, including his Social Security number and date of birth." Reply at 5:3-6. Thus, CIC contends, even if it was mistaken in believing Thomas, himself, signed up for Triple Advantage, any mistake it made was reasonable, meaning it cannot have *willfully* violated the FCRA. *Id.* at 5:6-9; Defendant CIC's Opposition to Summary Judgment ("Opp."), Docket No. 31, at 9:25-10:4.

For his part, Thomas contends that he sent CIC dispute letters on August 17, 2011, April 2, 2012, and November 2, 2012, each of which state, in effect, "I recently reviewed my Experian credit and found your company listed as an inquiry . . . . I never heard of this company before and I never had any business with you." *See* TUFs 3-5; Thomas Decl., Exs. B-D. Accepting Thomas's version of events as true, CIC was repeatedly told that Thomas never signed up for the Triple Advantage service – thereby notifying CIC that it lacked a permissible purpose for obtaining his credit reports – yet CIC continued obtaining his reports for more than a year after the first letter. Unlike *Safeco*, this is not one of those cases where CIC was dealing with a "less-than-pellucid statutory text" subject to multiple reasonable interpretations. *Cf. Safeco*, 551 U.S. at 70. It is quite clear that if Thomas did not actually enroll in the Triple Advantage program, CIC would have no valid reason for obtaining his credit reports. Thus, if CIC actually received Thomas's letters, that would seem sufficient make CIC's later attempts to obtain his credit reports "willful" FCRA violations (assuming that CIC actually lacked a permissible purpose for obtaining the reports). *See, e.g., Pintos v. Pac. Creditors Ass'n*, No. 03-CV-5471-CW, 2011 U.S. Dist. LEXIS 99208, at *10 & n.2 (N.D. Cal.Sept. 2, 2011) ("Indeed, if there were evidence that PCA knew it lacked a permissible purpose, its intentional act could render it liable under the FCRA's willfulness prong"); *Valdez v. Capital Mgmt. Servs. LP*, No. 09-CV-246, 2010 U.S. Dist. LEXIS 121483, at *48-*49 (S.D. Tex. Nov. 16, 2010) (finding that plaintiff could state a willful FCRA violation by alleging he sent defendant dispute letters containing facts showing that the defendant lacked a permissible business purpose for obtaining his credit reports) (citing *Cappetta v. GC Servs. Ltd. P'ship*, 654 F.Supp.2d 453, 461 (E.D. Va. 2009) (finding that plaintiff could state a claim under the FCRA by pleading facts showing defendant pulled her credit report despite knowing that she was not the account holder)).

CIC disputes it received Thomas's letters, claiming that its business practice is to maintain customer letters in its files, but it does not have any record of Thomas's August 2011, April 2012, and November 2012 dispute letters. But like the "permissible purpose" question, the question of willfulness boils down to a factual dispute over whether Thomas sent, and whether CIC received, the 2011 and 2012 dispute letters stating that Thomas never enrolled in Triple Advantage. Thomas swears that he sent the letters to CIC. CIC swears that it never received them. If a jury believes Thomas's version of events – that he sent the letters to CIC – and, in addition, that he never enrolled in Triple Advantage, that would likely be sufficient to support a willful non-compliance finding.[8]

---

[8] Under the mailbox rule, Thomas would be entitled to a rebuttable presumption that CIC received his letters if a jury believed he actually put them in the mail. At the very least, this presumption, coupled with Thomas's declaration, is sufficient to avoid summary judgment. *See, e.g., Hadsell v. Cach, LLC*, No. 12-CV-235-L(RBBx), 2014 U.S. Dist. LEXIS 16831, at *16 (S.D. Cal. Feb. 6, 2014) (denying reconsideration of earlier order denying summary judgment and finding that plaintiff's declaration, coupled with mailbox rule, created a material issue of fact regarding issue of whether defendant actually received cease and desist letter although defendant had no record of receiving it); *In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 733 (B.A.P. 9th Cir. 2002) ("Under the 'mailbox rule,' upon proof that mail is properly addressed, stamped and deposited in an appropriate receptacle, it is presumed to have been received by the addressee in the ordinary course of the mails") (citations and quotations omitted); *Fort*

While the Court has serious questions about Thomas's credibility based on his deposition – as stated below – here, as in many other cases, willfulness is not something that can be resolved on summary judgment. *See generally Edwards v. Toys "R" Us*, 527 F.Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("Willfulness under the FCRA is generally a question of fact for the jury") (collecting cases).

Finally, in another variation on its earlier arguments, CIC argues that even if it received Thomas's dispute letters, and even if it lacked a permissible purposes, it did not willfully violate the FCRA because "the FCRA permits obtainment of credit information for permissible purposes even over the objections of the consumer." Supp'l Reply at 6:20-7:1. This argument may have purchase in certain scenarios, but not where the purported permissible purpose flows from the consumer's supposed consent, as it does here. Accepting Thomas's version of the disputed facts, he never signed up for Triple Advantage or otherwise authorized CIC to access his credit reports, meaning CIC did not have a permissible purpose. While, based on the undisputed facts, CIC has a fair argument that it did not willfully violate the FCRA until receiving a dispute letter (as discussed below), receiving the first dispute letter would have notified CIC that it *lacked a permissible purpose*, not merely that Thomas was objecting to CIC obtaining his credit reports for permissible purposes.

For the reasons just discussed, therefore, CIC is not entitled to *summary judgment* on the ground that its non-compliance was not "willful." At the same time, the Court may be prepared to grant *partial summary judgment* on Thomas's claim up until the point when he sent the first dispute letter. Even if mistaken, CIC could have reasonably believed – given its then-uncontested customer records – it had a permissible purpose for accessing Thomas's credit reports before receiving the first dispute letter. Thus, until the first dispute letter, any violation of the FCRA would not have been willful. Now, it is somewhat hard to identify the precise point at which CIC might have received a dispute letter since it claims it never did. But, at a minimum, the Court may be prepared to grant partial summary judgment on those portions of Thomas's FCRA claim predicated on pre-August 17, 2011[9] access to his credit reports.

---

*Independence Indian Cmty. v. California*, No. 08-CV-432-LKK(KJMx), 2008 U.S. Dist. LEXIS 109356, at *4 (E.D. Cal. June 24, 2008) ("Although plaintiff argues that it is entitled to a rebuttable presumption that the letter was received under the mailbox rule, any such presumption exists independent of whether it is asserted in the pleadings"); *see generally* 29 Blum, Bourdeau, et al., Am. Jur. 2d Evidence (May 2014) § 273 ("Under the common law 'mailbox rule,' if a letter properly directed is proved to have been either put into the post office or delivered to the mail carrier, and not returned to the sender, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed. The rule does not create a conclusive presumption that the letter arrived, but a mere inference of fact founded on the probability that the officers of the government did their duty in the usual course of business.").

CIC contends that Thomas has "no proof that [his dispute letters] were placed in the mail," such as "a postmarked envelope or other proof that the letters were ever sent." Supp'l Reply ISO MSJ ("Supp. Reply"), Docket No. 57 at 6:16-18. In these circumstances, CIC contends, "assigning the presumption" afforded by the mailbox rule "would lead to absurd results." *Id.* at 6:18-20. Both as a factual and doctrinal matter, this is incorrect. As a factual matter, Thomas submitted declaration(s) stating that he mailed the dispute letters to CIC. *See* TUFs 2-4. So there is evidence that the letters were placed in the mail – CIC just finds the evidence unreliable. As a doctrinal matter, CIC seems to be advocating for a mailbox rule that only applies where the mailing is evidenced by a second writing – akin to a mailbox rule statute of frauds – rather than the purported mailer's statement that he or she put the letter in the mail. While that might be nice for evidentiary reasons, CIC cites no case establishing this requirement.

[9]Thomas contends that he sent the first dispute letter on August 17, 2011. TUF 2.

### C. *Thomas's Conduct During His Deposition*

While the Court would mostly deny summary judgment, which is effectively a win for Thomas, it would be remiss for not mentioning his conduct during the February 21, 2014 deposition. *See* Declaration of Nilab N. Rahyar, Docket No. 29-1, Ex. A ("Rahyar Decl."). The Court reviewed the deposition transcript in the course of evaluating the parties' submissions. During the deposition, Thomas repeatedly claimed not to recall or know basic details about his life, like where he was born, *id.* at 17:11-17, the last four numbers of his social security number, *id.* at 21:1-21, how long he has lived at his current address, *id.* at 22:6-23:19, whether he owned or rented his residence, *id.* at 24:14-19, where he went to high school, *id.* at 25:16-22, whether he went to a hundred or a million high schools, *id.* at 26:6-11, and so on. Thomas also repeatedly objected and refused to answer questions he deemed irrelevant, like whether he was married, *id.* at 21:22-22:5, and whether anyone else lived at his house, *id.* at 24:20-25:2, although those questions are surely relevant where Thomas is claiming someone else used his information to subscribe to Triple Advantage.[10] Lest there be any doubt, Thomas's Bieberesque[11] behavior during the deposition was totally unacceptable. While courts often give *pro se* litigants some leeway if they make *good-faith* errors, *pro se* parties are ultimately expected to abide by the same rules as represented parties. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants"), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).[12]

### IV. Conclusion

As discussed, two material facts remain largely in dispute: (1) whether Thomas actually enrolled in Triple Advantage credit monitoring, and (2) whether Thomas actually sent, and whether CIC actually received, dispute letters in 2011 and 2012. With the possible exception of claims arising from pre-August 17, 2011 activity, the Court would DENY both parties' motions.

---

[10] In any event, a deponent may not refuse to answer a deposition question because he deems it irrelevant. *See* Fed. R. Civ. P. 30(d)(1); *Folz v. Union Pac. R.R.*, No. 13-CV-579-GPC(PCLx), 2014 U.S. Dist. LEXIS 85960, at *4 (S.D. Cal. June 23, 2014) ("A deponent may object on the basis of relevance, but may not refuse to answer the questions based on that objection") (collecting cases).

[11] *See* TMZ, Justin Bieber Videotaped Deposition Like You've Never Seen Him . . . And It's Bad, http://goo.gl/fvAE69 (last visited July 21, 2014).

[12] While CIC apparently chose not to bring a sanctions motion, Thomas should not be under the impression that his behavior during the deposition will ultimately go unpunished. If this case goes to trial, the deposition testimony will no doubt provide ample grounds for impeachment on cross-examination.